## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHAUNA J. BARNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-07-1294-F |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Shauna J. Barnett ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

## Administrative Proceedings

In 1995, Plaintiff – then fifteen years old – was determined to be disabled due to a mental impairment which met the severity of Childhood Listing 112.04, 20 C.F.R, Part 404, Subpart P, Appendix 1 [Tr. 21 and 54 - 57]. In 1999, a new determination using adult supplemental security income criteria was required by law; upon application of that criteria,

a Disability Hearing Officer found Plaintiff capable of performing unskilled work [Tr. 21, 23, and 446 - 456].  Plaintiff then requested a hearing before an ALJ [Tr. 459] who by decision of September, 2000, determined that Plaintiff was not disabled under adult supplemental security income regulations [Tr. 630 - 641].  Nonetheless, incorrect information was entered into the Social Security Administration's system, allowing Plaintiff to continue to receive benefits [Tr. 21 and 23].

When the case was next subject to routine review, the error was discovered and, following notice of a cessation of benefits and a determination by a Hearing Officer that Plaintiff was not disabled [Tr. 21, 23 - 24, and 646 - 668], Plaintiff requested a hearing before an ALJ [Tr. 672], maintaining that she was disabled due to bipolar disorder  [Tr. 723 - 729]. A July, 2006 hearing was held where Plaintiff, her mother, and a vocational expert testified [Tr. 860 - 893].  In her September, 2006 decision the ALJ found that Plaintiff retained the capacity to perform work existing in the national economy and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 21 - 29].  The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 9 - 11], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted).  Nonetheless, while this court

2

can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial.  "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion."  *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.* at 299.

## **Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.§423(d)(1)(A).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  *See* 20 C.F.R. §416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail).  Under this sequential procedure, Plaintiff  bears the initial burden of proving that she has one or more severe impairments.  20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.  *Turner,* 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

## Plaintiff's Claims of Error

Plaintiff maintains that the ALJ erred as a matter of law by failing to properly evaluate the opinions of Plaintiff's treating physician, Dr. Hasbrook, and a medical expert, Dr. Rawlings. Additionally, it is Plaintiff's claim that neither the ALJ's residual functional capacity[1] assessment nor her findings at step five are supported by substantial evidence. Because the undersigned agrees that the ALJ's analysis of Dr. Hasbrook's medical source opinion is legally deficient – a deficiency that impacts both the RFC assessment and the step five findings – Plaintiff's contentions with respect to Dr. Rawling's opinions will not be addressed.

## Analysis

Under the law of the Tenth Circuit, "[a]ccording to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004). A sequential analysis must be undertaken by an ALJ when considering a treating source medical opinion which relates to the nature and severity of a claimant's impairments. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The first step, pursuant to Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2, is to determine whether the opinion is well-supported by medically acceptable techniques. *Watkins,* 350 F.3d at 1300. At the second step, adjudicators are instructed that "[e]ven if

---

[1]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945 (a) (1).

well-supported by medically acceptable clinical and laboratory diagnostic techniques, the
treating source's medical opinion also must be 'not inconsistent' with the other 'substantial
evidence' in the individual's case record." SSR 96-2p, 1996 WL 374188, at *2. If both of
these factors are satisfied with regard to a medical opinion from a treating source, "the
adjudicator must adopt a treating source's medical opinion irrespective of any finding he or
she would have made in the absence of the medical opinion." *Id.* If, on the other hand, "the
opinion is deficient in either of these respects, then it is not entitled to controlling weight."
*Watkins,* 350 F.3d at 1300.

Once the ALJ determines that a treating source opinion is not entitled to controlling
weight, she must consider the weight she does give to such opinion "using all of the factors
provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id.* "Those factors are: (1) the length of the
treatment relationship and the frequency of examination; (2) the nature and extent of the
treatment relationship, including the treatment provided and the kind of examination or
testing performed; (3) the degree to which the physician's opinion is supported by relevant
evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not
the physician is a specialist in the area upon which  an opinion is rendered; and (6) other
factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.*
at 1300-1301. If she rejects the opinion completely, the ALJ must offer specific and
legitimate reasons for so doing. *Id.*; SSR 96-2p, 1996 WL 374188, at *4; *Miller v. Chater,*
99 F.3d 972, 976 (10th Cir. 1996).

As part of her review of the medical evidence of record in this case, the ALJ summarized Plaintiff's initial evaluation by her treating psychiatrist, Dr. Vivian Hasbrook:

> In February, 2005, Vivian Hasbrook, M.D., evaluated the claimant. Dr. Hasbrook noted that the claimant had been referred by her representative who reportedly told the claimant that it would help her case to have care through a mental health clinic and by a psychiatrist. The claimant appeared at the Northwest Center for Behavioral Health with her two young children. She was alert and oriented. Her speech had a regular rate and rhythm without any tangentiality or circumstantiality noted. Her thoughts were coherent and goal oriented. She denied any suicidal or homicidal thoughts or plans. She denied any psychotic symptamotology [sic]. She reported that she only used Ambian for sleep if she felt like she was "wound up and going." Intellectual functioning was estimated in the average range. Insight was fair; judgment good; and memory intact to recent, remote, and immediate recall. The claimant reported that she was hospitalized at Oak Crest about two or three times while a teenager. The claimant reported that she became pregnant when she was sixteen and married. She stated that she subsequently divorced and remarried, and that she and her husband had some "rough times," but that they were still together. She stated that she could not work because her emotional state "physically" wore her down. Dr. Hasbrook noted that the claimant's assets included good intellectual functioning and the desire to have a more stable life. The claimant's global assessment of functioning (GAF) was estimated at 60.

[Tr. 25].

The ALJ then considered[2] the July, 2006, Mental Medical Source Statement which Dr. Hasbrook submitted by mail following Plaintiff's administrative hearing [Tr. 25 and 856 - 859]. The ALJ noted the moderate limitations assessed by Dr. Hasbrook in her statement, beginning with the limitations implicated by Plaintiff's difficulties with sustained

---

[2]The ALJ did not address Plaintiff's subsequent appointments with Dr. Hasbrook – appointments which spanned the period from April 15, 2005, through February 3, 2006 [Tr. 846 - 849].

concentration and persistence: moderately limited in her ability to carry out detailed instructions; in her ability to perform activities within a schedule; in her ability to maintain regular attendance; in her ability to be punctual within customary tolerances; in her ability to work in coordination with or proximity to others without being distracted by them; and, in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms.  [Tr. 25 and 857].

Next, the ALJ listed the moderate limitations which, in Dr. Hasbrook's opinion, arose in the area of social interaction: Plaintiff is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors and is likewise moderately limited in her ability to get along with co-workers or peers without distracting them on exhibiting behavioral extremes.  *Id.*  Finally, and in connection with Plaintiff's adaptation abilities, the ALJ noted Dr. Hasbrook's conclusion that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting [Tr. 25 and 858]. In addition to recounting the moderate limitations assessed by Dr. Hasbrook, the ALJ also listed the doctor's findings in areas where Plaintiff had either no or no significant limitations [Tr. 25 - 26].

Following her consideration of this and other evidence of record, the ALJ determined that Plaintiff had the residual function capacity to perform a very wide range of unskilled work but was limited by her need to avoid both highly stressful work and contact with the general public [Tr. 27].  After making this assessment, the ALJ stated that:

The Administrative Law Judge considered all medical opinions according to the directives of 20 C.F.R. 416.927 and Social Security Ruling 96-2p, Ruling 96-5p, and Ruling 96-6p.  The Administrative Law Judge also considered the nature and length of treating relationships, areas of speciality, findings supporting opinions, and similar factors.  Opinions of treating physicians concerning the nature and severity of the claimant's impairments were given controlling weight when amply supported and not contrary to other credible evidence.  Matters such as residual functional capacity, meeting listing criteria, vocational factors, and the ultimate issue of disability were reserved for the adjudicator.  Opinions on such matters are considered but are never given controlling weight.

[Tr. 28].

Plaintiff argues that the ALJ erred by failing to properly apply the treating physician rule to an analysis of Dr. Hasbrook's opinions as to Plaintiff's moderate limitations [Doc. No. 16, p. 19].  Plaintiff further maintains that such error was not harmless because these limitations were not included in her residual functional capacity assessment and, consequently, were not included in hypothetical questions to the vocational expert.  *Id.,* p. 20.  The Commissioner, on the other hand, maintains that the ALJ correctly "rejected" Dr. Hasbrook's opinions [Doc. No. 17, p. 6], having properly considered the medical source statement and demonstrating – through her summarization of the records – that she had evaluated the opinions.  *Id.* at 4.  The Commissioner also points to the ALJ's finding that "the opinion was not entitled to weight as it was not amply supported" and argues that "[a] review of the records bears this out." *Id.* at 5.  The Commissioner then cites to specific portions of the record where Dr. Hasbrook found Plaintiff to be doing well, contending that "[w]hen the opinion of a treating physician is unsupported by clinical data, that opinion may be discounted." *Id.*

It is the undersigned's opinion that the ALJ failed to adhere to the mandate of the treating physician rule in connection with her rejection of Dr. Hasbrook's opinions.  If an ALJ rejects an opinion completely, she must offer specific and legitimate reasons for so doing.  *Watkins,* 350 F.3d at 1300 - 1; SSR 96-2p, 1996 WL 374188, at *4;  *Miller,* 99 F.3d at 976 (10th Cir. 1996).  Here, the ALJ failed to offer *any* reasons for her determination but, instead, simply repeated the findings from Dr. Hasbrook's medical source opinions and then generically concluded that "[o]pinions of treating physicians concerning the nature and severity of the claimant's impairments were given controlling weight when amply supported and not contrary to other credible evidence." [Tr. 28].  The ALJ did not affirmatively point to any specific findings by Dr. Hasbrook and explain how such findings were either unsupported or contrary to other credible evidence.

In addition to failing to provide specific and legitimate reasons – reasons which could be reviewed on appeal – for her rejection of Dr. Hasbrook's opinion, the ALJ misinterpreted that opinion.  In elaborating on Plaintiff's  functional capacity assessment,  Dr. Hasbrook stated that:

> Most of [Plaintiff's] moderate limitations occur in dealing with people in authority, i.e. employers.  I cannot say that this has anything to do with her mental illness diagnosis or if it is more personality and desire driven.

[Tr. 859].  In her review of the medical source statement, the ALJ, however, recast Dr. Hasbrook's statement in the following manner:

> Dr. Hasbrook noted that most of these limitations occurred in dealing with people in authority, and that she (Dr. Hasbrook) could not say that this had

9

anything to do with mental illness. *Dr. Hasbrook was of the opinion the limitations could be "more personality and desire driven."*

[Tr. 25 (emphasis added)].   The latter statement by the ALJ is plainly erroneous: Dr. Hasbrook stated that she could *not* say whether most[3] of Plaintiff's limitations arose from her mental illness or were more personality and desire driven.

Accordingly, because the ALJ erred by failing to properly evaluate Dr. Hasbrook's medical source statement, remand is required for additional proceedings.

## <u>RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT</u>

For the foregoing reasons, it is recommended that this matter be reversed and remanded for further proceedings in accordance with this report. The parties are advised of their right to object to this Report and Recommendation by October 8, 2008, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1.   The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein.   *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).   This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

---

[3]If the ALJ was using Dr. Hasbrook's inability to tie "most" of Plaintiff's moderate limitations to her mental illness as a reason for rejecting the doctor's opinions, she does not explain how she was justified in rejecting *all* of the limitations instead of only "most" of them.

ENTERED this 18th day of September, 2008.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE